UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JOSHUA PRICE,

    Plaintiff,

v.                                Civil Action No. 2:15-cv-11002

WEST VIRGINIA AIR NATIONAL
GUARD, 130th AIRLIFT WING,

    Defendant.

## COMPLAINT FOR DAMAGES

Now comes the plaintiff, Joshua Price (hereinafter, "Plaintiff"), by and through his counsel Michael O. Callaghan, Joshua R. Martin, and the law firm of Neely & Callaghan and brings this action for wrongful termination, breach of contract, and for any and all other causes of action shown.

## PARTIES

1. Plaintiff currently resided in 420 Blake Road, Nitro, Kanawha County, West Virginia. At all relevant times Plaintiff was a member of the West Virginia Air National Guard's 103th Airlift Wing.

2. The West Virginia Air National Guard, 130th Airlift Wing, is located at 1679 Coonskin Drive, Charleston, Kanawha County, West Virginia.

## JURISDICTION AND VENUE

3. Jurisdiction is proper as Plaintiff was employed by Defendant as a civilian technician under 32 U.S.C. § 709 which requires suit be brought in federal court. Venue is proper as

Defendant, West Virginia Air National Guard, is located in Kanawha County, West Virginia, which is situated within the Southern District of West Virginia.

### STATEMENT OF FACT

4. Plaintiff enlisted in the United States Air Force in December 1998, and served in that capacity until February 2005 when he became a civilian technician. At all relevant time Plaintiff maintained the employment status as a civilian technician until his wrongful termination.

5. While a civilian technician Plaintiff was required to be a member of the West Virginia Air National Guard. While a member of the 130th Airlift Wing, Plaintiff was required to work weekends for the National Guard, along with his other obligations as being a member of the Air National Guard.

6. During his service to our county, Plaintiff was part of every deployment overseas (nine total deployments), except one, that the 130th Airlift Wing made to the Middle East. During his service overseas Plaintiff was bombed over 100 times by enemy fighters, but was able to maintain his calm under fire which allowed him to distinguish himself as an exceptional airman. Due to his bravery and performance Plaintiff was awarded three Air Force achievement medals and was name airman of the week (out of 10,000 airmen).

7. Unfortunately, his persistent service to our country and the heavy combat that he was involved in took a toll on him and his young family, and while on deployment in September 2010, he received a letter from his wife asking for a divorce. In spite of Plaintiff's knowledge that he was going to be divorce upon his return from Afghanistan he served his country honorably for his four (4) month deployment.

8. Upon information and belief, after Plaintiff arrived back from Afghanistan he was seen by doctors, per military protocol, and it was noted in his medical charts that Plaintiff should receive help for his stress, but the Defendants ignored the recommendation of the doctors.

9. The strain of war and the loss of his marriage caused Plaintiff psychological distress for which he began to treat with alcohol.

10. Plaintiff began to miss work as a result of his alcoholism, and when he realized that he had a problem with alcohol he went to the Air National Guard and asked for help, as he was supposed to do. Plaintiff was immediately taken to the Veterans' Administration Hospital in Huntington, West Virginia for treatment.

11. During his intake screen at the Huntington, West Virginia Veterans' Administration Hospital Plaintiff admitted to drinking an entire case of beer before being admitted and was severally intoxicated during his interview.

12. The toxicology report from the VA Hospital was negative for any illegal drugs. Furthermore, all prior drug screens take by Plaintiff during his time with the Air Force and the West Virginia Air National Guard were all negative for illegal drugs.

13. Plaintiff successfully completed his alcohol treatment program with the Huntington, West Virginia VA Hospital. He then underwent outpatient therapy for his alcohol problem. During his outpatient therapy Plaintiff was again deployed overseas to serve his country.

14. During 2014 Plaintiff began to experience a bout of depression associated with his combat service. In order to prevent a relapse he notified the WVANG that he needed time off to deal with his personal issues. Plaintiff was allowed one week off to deal with his personal issues.

15. When Plaintiff returned from his time off, he was instructed by WVANG to bring in his treatment notes, which he did immediately. The treatment notes indicated that Plaintiff was receiving treatment for post traumatic stress disorder. At this time Plaintiff was ordered by Lieutenant Colonial Cox to get the rest of his medical records and give them to him, which Plaintiff did that same day.

16. When the medical records were examined by the WVANG it was discovered that during his 2010 intake at the Huntington, West Virginia VA it was noted that Plaintiff had said that he had used cocaine. However, as stated above, Plaintiff drug screen came back negative for illegal drugs, and showed that at the time the statement was given he had a blood alcohol concentration of .3, which is almost four times the legal limit to operate a motor vehicle.

17. Approximately a week later Plaintiff was summoned to Lt. Col. Cox's office. At that time he was presented discharge papers for the use of illegal drugs, and informed that he needed to leave the premises immediately. Shortly after his meeting with Lt. Col. Cox, Plaintiff began an administrative proceeding regarding his discharge.

18. After becoming aware of the incorrect entry the Plaintiff contacted the VA regarding the medical record, and after going through the proper process the medical record was corrected by having the reference of doing illegal drugs deleted.

19. In spite of its knowledge that Plaintiff had not used illegal drugs and its knowledge that Plaintiff was receiving treatment for PTSD the WVANG still attempted to terminate Plaintiff from employment in violations of its own rules and regulations.

20. Ultimately Plaintiff and Defendant entered into a settlement agreement. According to the terms and conditions of the settlement the Plaintiff agreed to resign from

employment, but that he was to maintain his retirement benefits that he had earned over his 15 year military career.

21. Upon information and belief when Plaintiff arrived at WVANG headquarters to sign his paperwork, without is counsel present, the WVANG switched the discharge paperwork that Plaintiff was suppose sign with discharge paper that completely stripped him of his military benefits.

22. Plaintiff asserts that had he been discharged without fighting his termination that he would have still been entitled to his military retirement, therefore, he would have never knowingly signed a discharge paper that stripped him of his retirement benefits.

23. Plaintiff asserts that the WVANG breached the settlement agreement that he had reached with him when it switched the discharge paperwork that Plaintiff was supposed to sign with the paperwork that stripped him of his retirement benefits.

24. After Plaintiff had been stripped of his retirement benefits he learned that a letter had been published stating that Plaintiff had made terroristic threats against the WVANG. Upon information and belief the letter was signed by high ranking military officials and was knowingly false.

## COUNT I (BREACH OF CONTRACT)

25. Plaintiff realleges and incorporates herein all the allegations contained in the previous paragraphs.

26. Plaintiff alleges that the parties had a meeting of the minds in which all agreed that he would drop his administrative proceeding against Defendant and that it would give him an honorable discharge along with his earned retirement benefits.

27. Defendant breached the oral contract that it had entered into with Plaintiff by having him sign paperwork outside the presence of his attorney that stripped him of his military retirement benefits, contrary to the agreement that they had reached.

28. As a result of the breach of contract Plaintiff lost the retirement benefits that he had earned over the last 15 years, and Plaintiff was prejudiced as he dropped his administrative appeal against Defendants.

## COUNT II (FRAUDULENT INDUCEMENT)

29. Plaintiff realleges and incorporates herein all the allegations contained in the previous paragraphs.

30. Defendant's defrauded Plaintiff out of his earned military retirement by inducing him to dismiss his administrative proceeding against Defendant.

31. Defendant induced Plaintiff's action by promising to allow him to be honorably discharged from service and keep his retirement benefits.

32. Upon belief Defendant intentionally switched paperwork that was to be signed by Plaintiff, and told him that the paperwork was what was previously agree to by the parties, when in fact the paperwork was exactly opposite of what the parties had previously agreed.

33. Upon belief the switch was intentional and done for the sole purpose of swindling Plaintiff out of his military retirement.

## COUNT III (WRONGFUL TERMINATION)

34. Plaintiff realleges and incorporates herein all the allegations contained in the previous paragraphs.

35. Defendant's termination of Plaintiff was wrongful, as they violated their own procedures regarding termination in this matter.

36. As a result of Defendant's wrongful termination Plaintiff lost not only his position in the WVANG he also lost his job as a civilian technician, and the associated pay and benefits associated with his employment.

## COUNT IV (LIBEL)

37. Plaintiff realleges and incorporates herein all the allegations contained in the previous paragraphs.

38. Defendant published a letter signed by high ranking military personnel that stated that Plaintiff was no longer allowed near Defendant's property because he had made terroristic threats against the base and staff.

39. Plaintiff asserts that the letter was written, published, and signed with specific knowledge that Plaintiff had not made such threats.

40. Defendant published the knowingly false letter in a deliberate attempt to lower Plaintiff's standing in the community and to embarrass him.

## PRAYER

WHEREFORE Plaintiff request that he be awarded compensatory damages in the amount to fairly and accurately compensate him for his economic losses, aggravation, and lost wages (both back pay and front pay) resulting from the Defendant's wrongful, intentional, malicious actions; reinstate his retirement benefits as he and Defendant had previously agreed; attorney fees; and any other such damages and relief that this Honorable Court deems appropriate to fully compensate Plaintiff.

**PLAINTIFF DEMANDS TRIAL BY JURY**

                                            **JOSHUA PRICE**
                                            **By Counsel**

*/s/ Joshua R. Martin*
**Michael O. Callaghan (WVSB #5509)**
**Joshua R. Martin (WVSB #10914)**
**NEELY & CALLAGHAN**
**159 Summers Street**
**Charleston, WV 25301**
**304-343-6500**
**304-343-6528**
**JMartin@NeelyCallaghan.com**